IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **WENDY ALLEN,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 11-422-DRH-CJP |
| **MICHAEL J. ASTRUE,** **Commissioner of Social Security,** | ) ) ) | |
| Defendant. | ) ) | |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to Chief Judge David R. Herndon pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff Wendy Allen seeks judicial review of the final agency decision finding that she is not disabled and denying her Disability Insurance Benefits (DIB).

## Procedural History

Plaintiff filed her application for DIB in June, 2007, alleging disability beginning on April 21, 2007. (Tr. 160). She later amended her alleged onset date to January 28, 2003. (Tr. 16).

After the application was denied initially and on reconsideration, a hearing was held before Administrative Law Judge (ALJ) Gary L. Vanderhoof. (Tr. 31-68). ALJ Vanderhoof denied the application for benefits in a decision dated May 24, 2010. (Tr. 10-16). The Appeals Council denied review, and this decision became the final agency decision. (Tr. 1).

Plaintiff has exhausted her administrative remedies and has filed a timely complaint in this court.

## Issues Raised by Plaintiff

Through counsel, Ms. Allen filed a motion for summary judgment at **Doc. 17.** In her

memorandum in support, she raises the following points:

1. The ALJ did not properly evaluate plaintiff's credibility.

2. The ALJ's determination of plaintiff's residual functional capacity (RFC) was erroneous because it did not account for all of her limitations and did not reflect the effects of her obesity.

3. The hypothetical question posed to the vocational expert (VE) was flawed because it did not include a limitation in concentration, persistence or pace.

4. The ALJ failed to establish whether the VE's testimony was consistent with the *Dictionary of Occupational Titles.*

5. The ALJ agreed to hold the record open for 30 days after the hearing for the submission of additional evidence, but he issued his adverse decision after only 20 days.

**Applicable Legal Standards**

In order to receive DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, a person is disabled when he or she has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. It must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **See,** *Schroeter v. Sullivan***, 977 F.2d 391, 393 (7th Cir.**

1992);*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Secretary at step five to show that the claimant can perform some other job. ***Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).** The Commissioner's burden at step five is to show that there are a significant number of jobs in the economy that claimant is capable of performing. **See, *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Ms. Allen is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing ***Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)**). This Court uses the Supreme Court's definition of substantial evidence, i.e, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richard v. Perales*, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, ***Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

## The Decision of the ALJ

ALJ Vanderhoof followed the five-step analytical framework described above. He determined that Ms. Allen had not been engaged in substantial gainful activity since the alleged onset date. He found that she has severe impairments of obesity, hypertension, status post knee surgery, mild degenerative changes in the lumbar spine, and major depression, and that her condition does not meet or equal a listed impairment. With regard to her mental impairment, the ALJ found that she had moderate limitation in her ability to maintain concentration, persistence or pace. The ALJ concluded that Ms. Allen has the RFC to perform a limited range of work at the sedentary exertional level. A VE testified that she was able to perform the jobs of addresser, surveillance system monitor and document preparer, all of which exist in significant numbers in the regional and national economies. The ALJ accepted this testimony and found that plaintiff could perform those jobs and was therefore not disabled. (Tr. 16-25).

## The Evidentiary Record

The Court has reviewed and considered the entire record in formulating this Report and Recommendation. The following is a summary of some of the pertinent portions of the written record.

**1.    Agency forms**

Ms. Allen filed a previous claim for benefits, alleging that she became disabled following a car accident in January, 2003. (Tr. 168). The prior application was denied on July 2, 2003. (Tr. 177).

Plaintiff was last insured for DIB on June 30, 2007. (Tr. 166). She is not eligible for SSI benefits because her countable income exceeds the allowable amount. (Tr. 168).

Ms. Allen was born in 1963 and was 39 years old in January, 2003. (Tr. 176). In a Work History Report, she stated that she did babysitting in her home from 2004 to 2007, and she worked assisting disabled people in their homes from 2000 through 2005. (Tr. 204). The most

she ever made in a year was $4,312.00 in 2002. (Tr. 171).

In an Activities of Daily Living Questionnaire, Ms. Allen said that she spent her time watching television, using a computer and talking to her family. She prepared meals daily. She did cleaning and laundry. She shopped once a week for food and household supplies, with the help of her husband or daughter. She usually did not drive because she felt dizzy all the time. and her right arm hurts. She avoided people because of anxiety attacks, and she cried often due to depression. (Tr. 232-241).

**2.    Medical treatment up to date last insured[1]**

Following a car accident in January, 2003, Ms. Allen had pain in her left knee. (Tr. 576). In March, 2003, an MRI of plaintiff's left knee showed lateral subluxation of the patella with minimal joint effusion. (Tr. 559). On July 16, 2003, Dr. Tom Davis performed surgery on her left knee. (Tr. 560-561). Dr. Davis' notes indicate that she did well after the surgery. On August 26, 2003, her pain was relieved and she was walking without a limp. She had full range of motion of the knee. (Tr. 562).

There are no records from 2004.

The record contains a report of a consultative examination performed by Dr. Raymond Leung on March 4, 2005. (Tr. 473-482). Curiously, the record contains a second copy of Dr. Leung's report at Tr. 483-486. The second copy is exactly the same as the first, except that the date on the report was changed to March 4, 2008. Both reports reflect that Ms. Allen complained of arthritis pain in her right shoulder, back, hips, knees and feet. She was 69" tall and weighted 326 pounds. On examination, she was able to walk 50 feet unassisted and get on

---

[1] In a DIB case, a claimant must establish that she was disabled as of her date last insured. ***Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997)**. It is not sufficient to show that the impairment was present as of the date last insured; rather plaintiff must show that the impairment was severe enough to be disabling as of the relevant date. ***Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011)**.

and off the examining table. She could tandem walk, hop, heel walk, toe walk and squat 2/3 of the way down. She had no muscle atrophy or spasm. She had decreased range of motion in the right shoulder, cervical spine, lumbar spine, hips and knees. Dr. Leung's impression was hypertension, arthritis, morbid obesity and history of vertigo.

Plaintiff had a partial hysterectomy in March, 2005. On May 12, 2005, she told her doctor she was doing well and feeling good. Her incision was well-healed. (Tr. 635-636).

Ms. Allen complained of abdominal pain in May, 2006. (Tr. 629). A CT of the abdomen and pelvis showed masses in the pelvis. (Tr. 432). She had an allergic reaction to dye used in the study, and went to the emergency room twice. (Tr. 319, 343, 627). On May 21, 2006, she was admitted to Barnes Jewish Hospital in St. Louis, Missouri, for management of her allergic reaction. (Tr. 266-269). She was discharged the next day. (Tr. 271).

On June 7, 2006, Ms. Allen had surgery consisting of an exploratory laparotomy, enterolysis and bilateral salpingo-oophorectomy due to her pelvic masses. It was noted that she had "extensive pelvic adhesions." (Tr. 298-299).

Ms. Allen was treated at Community Health & Emergency Services, Cedar Court Clinic, in 2006 and 2007. In August, 2006, she complained of joint pain all over, hot flashes, bilateral knee pain, hip pain and foot pain. On examination, she had a full range of motion of her upper and lower extremities with no crepitus. (Tr. 424-425). On January 29, 2007, she presented with headaches, dizziness, numbness in all four extremities, chest pain and swelling in her feet. She was 308 pounds. (Tr. 421). Her ankles were swollen. Her blood pressure was uncontrolled. She was to be scheduled for a stress test, and was instructed to go to the emergency room if her symptoms got worse. (Tr. 422).

On March 27, 2007, Ms. Allen saw Dr. Adams to follow up regarding her blood pressure. She complained of "shakiness inside" since starting Lexapro. Her depression was better. She was instructed to decrease the dosage of Lexapro. (Tr. 435).

### 3. Medical treatment after date last insured

Plaintiff was seen for the first time by Dr. James Wachter at Carterville Family Practice on July 18, 2007. She gave a history of depression, GERD, high blood pressure, vertigo and morbid obesity. She had suffered from grief and depression since the death of her son in 1993. She had been treated with antidepressants, but they had been discontinued. She had not been taking her other medications as she lost her insurance when her husband lost his job. On examination, she was tearful and crying. She had tenderness in the right shoulder area, and crepitus with full range of motion of the shoulders, elbows, wrists and hands. Her grip strength was 5/5. Various medications were prescribed. (Tr. 545).

On August 24, 2007, her depression was under much better control. She was complaining of right arm and shoulder pain. On exam, she could abduct her shoulder to 90 degrees. She had point tenderness and positive impingement sign. She had full range of motion of the neck. The doctor ordered an MRI of the neck and a nerve study of the right arm. She had no depression symptoms and was "remarkably improved." (Tr. 543). A note indicates the MRI was cancelled due to "patient size." (Tr. 498).

In September, 2007, Harry J. Deppe, PhD, performed a consultative psychological examination. She told him that her son had drowned 14 years ago, and she had never gotten over it. She was taking Celexa, prescribed by her family doctor. She was cooperative and able to answer questions. She had no formal thought disorders. She had no difficulty staying on task, and was oriented to time, place and person. Her memory was good and her abstract reasoning skills were normal. She denied current or past suicidal ideation. Dr. Deppe diagnosed her with major depression, recurrent. (Tr. 451-454).

Ms. Allen also underwent a physical consultative examination in September, 2007, by Dr. Adrian Feinerman. On examination, she had pain in her right shoulder with abduction above 90 degrees, but no limitation of motion of any of her joints. Grip strength was strong and equal.

She was able to walk 50 feet. She had no pain in her weight-bearing joints. Sensory examination was intact, and she had no muscle spasm or atrophy. Muscle strength was normal, and fine and gross manipulation were intact. Dr. Feinerman concluded that she was able to sit, stand and walk normally, and that she was able to lift, carry and handle objects without difficulty. (Tr. 463-467).

Dr. Wachter saw plaintiff on March 6, 2008. She reported increasing panic attacks and sadness. She was having bilateral knee pain and right shoulder pain. She had recently fallen when her left knee gave out. (Tr. 536). In April, 2008, she was distraught as her son had been charged with murder. Dr. Wachter recommended hospitalization, but she was scheduled to meet with her son's lawyer. He added Trazadone to help her sleep. (Tr. 534). She called the office a few days later and said she was feeling better and did not want to go inpatient. (Tr. 533). On April 23, 2008, she was doing markedly better. (Tr. 531). On August 14, 2008, Dr. Wachter again noted that her anxiety and depression were much better. (Tr. 526). In July, 2009, Ms. Allen told Dr. Wachter that her son had been found not guilty, but she was feeling stressed. She had stopped Trazadone, but wanted to start it again. (Tr. 524). In October, 2009, she had increasing depressive symptoms and suicidal thoughts, but no plans. Dr. Wachter discontinued Trazadone and added Abilify, Cymbalta and Lyrica. (Tr. 520).

**4.**     **State Agency Consultant Assessments**[2]

On September 21, 2007, a state agency consultant completed a Psychiatric Review Technique form. (Tr. 437-450). The conclusion was that she had major depression which did not meet or equal a listed impairment. The form says that the assessment is for the period from June 30, 2007, to the present, i.e., after the date last insured. See, Tr. 437.

---

[2]"State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." **Social Security Ruling 96-6p, at 2.**

Two physical RFC assessment forms were completed. The first one was dated September 26, 2007, and was an assessment as of that date. (Tr. 455-462). The second form was completed on April 2, 2008, and was an assessment as of the date last insured. (Tr. 487-494).

The second RFC assessment concluded that Ms. Allen could perform a limited range of sedentary work. She could occasionally lift 10 pounds, frequently lift 10 pounds, stand for a total of 2 out of 8 hours, and had unlimited ability to push/pull and operate foot controls. She needed to be able to alternate sitting and standing due to her arthritis and obesity. She was limited to only occasional postural activities such as balancing and stooping, and she should never climb ladders or scaffolding. (Tr. 487-494).

**5** **Evidentiary Hearing**

Plaintiff was represented at the hearing by attorney Joanie Beth Bailey. (Tr. 31). At the hearing, plaintiff's counsel submitted additional medical records from 2003 through 2005. (Tr. 34).

Psychologist Susan Pelzer testified as a medical expert. However, she had, of course, not reviewed the medical records that were submitted on the day of the hearing. Dr. Pelzer testified that she had not seen any material that predated June 20, 2007. (Tr. 35-36). The ALJ asked her to assess Ms. Allen's RFC based on the limited records that she did have. (Tr. 42).

Plaintiff's counsel reserved the right to question the doctor after the doctor had an opportunity to review the complete record. Counsel indicated that she intended to submit interrogatories to the witness. (Tr. 42-43). The ALJ agreed to hold the record open for 30 days . (Tr. 60, 68).

The Court notes that the ALJ's decision refers to testimony from another medical expert, Dr. Leong. See, Tr. 19. The record contains a copy of Dr. Dorothy Leong's C.V. at Tr. 156. (This doctor should not be confused with Dr. Raymond Leung, who did a consultative physical

examination.) The transcript of the hearing does not list Dr. Leong as a witness. However, beginning at Tr. 40, the ALJ did question a medical expert about Ms. Allen's physical impairments and her physical RFC. It is unclear whether this medical expert was Dr. Pelzer or Dr. Leong.

The ALJ asked Ms. Allen to direct her testimony to the period before June 30, 2007. (Tr.44). She testified that she had limited daily activities, but she did do some housework. (Tr. 44-45). She could lift a bag of groceries or a gallon of milk. (Tr. 45). The doctor kept changing her antidepressant and anxiety medications. (Tr. 46). Her medications made her feel dizzy and sleepy. (Tr. 47). She took naps every day because of the side effects of her medications. (Tr. 52).

Ms. Allen testified that she could not do a job such as surveillance system monitor because of her inability to concentrate. (Tr. 50-51).

Vocational Expert James Laneer also testified. The ALJ asked him to assume a person who could lift 10 pounds occasionally and 5 pounds frequently, only occasional balancing, no climbing, no work at heights or with dangerous machinery, and only occasional postural activities. Further, he asked the VE to also assume that she was limited to routine, repetitive, noncomplex work. (Tr. 60-61). The VE testified that this person could do the work of an addresser, surveillance system monitor and document preparer. He said that these jobs are all sedentary and unskilled, and gave the DOT numbers. (Tr. 61-62). The ALJ asked several more hypothetical questions, each time adding another restriction, but none of the questions mentioned deficiencies of concentration, persistence or pace. (Tr. 62-64).

## Analysis

Plaintiff's third and fifth points are dispositive and require remand.

In assessing whether plaintiff's mental impairment met or equaled a listing, ALJ Vanderhoof found that she had moderate difficulties with regard to concentration, persistence, or

pace. (Tr. 20). This is one of the "B criteria," which are relevant to the enquiry at step 3 of the sequential analysis. He found that she did not meet or equal a listing, but said that his RFC assessment "reflects the degree of limitation the undersigned has found in the "paragraph B' mental function analysis." (Tr. 20-21).

In a series of recent cases, the Seventh Circuit has reversed and remanded where an ALJ found that plaintiff had deficiencies of concentration, persistence or pace, but failed to include that limitation in the hypothetical question posed to the VE. In ***O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010)**, the Court emphasized that "for most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." ***O'Connor-Spinner,* 627 F.3d at 620-621.** The situation in that case is remarkably similar to the situation presented here. Ms. O'Connor-Spinner suffered from depression and a state agency psychologist concluded that she had moderate limitation of concentration, persistence and pace. The ALJ agreed. The ALJ asked the vocational expert a series of hypothetical questions. The most restrictive hypothetical question restricted the person to routine, repetitive tasks with simple instruction, but did not include a limitation on concentration, persistence and pace. The Seventh Circuit held that the ALJ's decision was not supported by substantial evidence because the vocational expert was not asked to assume a limitation on concentration, persistence and pace. While the Court stated that there is no per se requirement that the phrase "concentration, persistence and pace" be used in the hypothetical, it went on to hold that the restriction to simple, repetitive tasks is not an adequate substitute because it "will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." ***O'Connor-Spinner, Ibid.***

Similarly, in ***Walters v. Astrue*, 2011 WL 502149, \*5 (7th Cir., October 21, 2011)**, the

Court held that an RFC assessment which limited the plaintiff to "routine, repetitive tasks with simple instructions" did not sufficiently account for limitations in concentration. In **Jelinek v. Astrue, 662 F.3d 805, 813-814 (7th Cir. 2011)**, the Court found that a limitation to unskilled work did not adequately alert the VE to the plaintiff's mental limitations, including limitations of concentration, persistence and pace.

Under these precedents, the ALJ's limitation in the hypothetical question to routine, repetitive, noncomplex work was not sufficient to alert the VE that Ms. Allen also had moderate limitations in concentration, persistence or pace.

In his brief, the Commissioner acknowledges the *O'Connor-Spinner* case, but still argues that the ALJ accounted for plaintiff's limitations in concentration, persistence or pace by limiting her to routine, repetitive and non-complex work. See, Doc. 21 at page 15. However, this argument was squarely rejected in the cases cited above. The Commissioner also suggests that the ALJ was giving plaintiff the benefit of the doubt by finding that she had moderate limitation in concentration, persistence or pace, and argues that this limitation is not supported by the reports of either Dr. Leung or Dr. Deppe. This argument is specious, at best. Review of the ALJ's decision is limited to the grounds relied upon by the ALJ. **Campbell v. Astrue, 627 F.3d 299, 307 (7th Cir. 2010); McClesky v. Astrue, 606 F.3d 351, 354 (7th Cir. 2010).** The ALJ expressly found that Ms. Allen had moderate limitation in concentration, persistence or pace. Tr. 20. The failure to account for that limitation in the hypothetical question cannot now be excused on the basis that there was evidence contradicting the ALJ's finding.

Plaintiff is also correct that the ALJ erred in not holding the record open for 30 days, as he said he would do. The hearing took place on May 4, 2010, and the ALJ issued his decision 20 days later, before plaintiff's counsel submitted interrogatories to the medical expert. The Commissioner acknowledges that this was error, but argues that the error was harmless. Doc. 21, pp. 17-18. According to the Commissioner, the error was harmless because Dr. Leong would

not have changed her testimony after reviewing the additional medical records.[3]

The harmless error doctrine applies in review of administrative proceedings. An error is harmless where it is "predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original decision failed to marshal that support, [so that] remanding is a waste of time." **Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir. 2010).** Here, the Commissioner is asking the Court to predict not the outcome on remand based on the record as it exists, but to predict what the evidence would be if plaintiff were allowed to submit her cross-examination to the medical expert. The Commissioner offers no authority to support his argument that the doctrine of harmless error can be stretched so far, and this Court's independent research has found no such authority.

Without making any suggestion as to whether plaintiff is, in fact, disabled, or as to what the ALJ's decision should be on reconsideration, this Court concludes that this case must be remanded to the Commissioner for further proceedings. Remand of a social security case can be ordered pursuant to sentence four or sentence six of 42 U.S.C. § 405(g). A sentence four remand depends upon a finding of error, and is itself a final, appealable order. In contrast, a sentence six remand is for the purpose of receipt of new evidence, but does not determine whether the Commissioner's decision as rendered was correct. A sentence six remand is not an appealable order. See, **Shalala v. Schaefer, 113 S. Ct. 2625, 2629 (1993); Perlman v. Swiss Bank Corporation Comprehensive Disability Protection Plan, 195 F.3d 975, 978 (7th Cir. 1999).**

Here, a sentence four remand is appropriate.

## Recommendation

This Court recommends that plaintiff's motion for summary judgment **(Doc. 17)** be

---

[3]As noted earlier, it is not even clear that Dr. Leong testified at the hearing.

granted, and the Commissioner's final decision be **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

Objections to this Report and Recommendation must be filed on or before **January 30, 2012.**

**Submitted: January 11, 2012.**

                                          **s/ Clifford J. Proud**
                                          **CLIFFORD J. PROUD**
                                          **UNITED STATES MAGISTRATE JUDGE**